In the Matter of the Estate of SOLOMON SHAPIRO, Deceased.

Surrogate's Court, New York County, March 24, 1952.

*Samuel Gottlieb* and *Walter S. Arenwald* for Dora M. Shapiro and another, as surviving executors of Solomon Shapiro, deceased, petitioners.

*Charles Recht* and *Jacob Lefkowitz* for Board of Jewish Religious Community at Town of Vilnius, Lithuania, respondent.

*Jack Sterngass* for Zosler Protective Association, respondent.

COLLINS, S. The executors apply for the repayment of an undelivered legacy and a direction that it be paid into the residuary estate which is held in trust. Decedent died in February, 1927. In paragraph Third of his will he gave $5,000 to the Talmud Torah School in his native town of Zosli, Lithuania " for the erection of a new building, which building shall be known as Solomon and Dora Shapiro Talmud Torah ". If no such school was in existence at the time of his death he authorized and directed his " executors to make every possible effort to organize such Talmud Torah School at my said town of Zosli, Lithuania, immediately after my decease in pursuance to and in accordance with the laws of Lithuania; to cause said building to be erected as soon as possible and to provide the necessary teaching staff for such school ". In the event his executors were " unable or unwilling " to carry out this wish the testator directed that they turn over the fund to the Zosler Unterstutzung Verein of the City of New York " on its promise and agreement to carry into effect " this provision of his will. If the Verein was " unable or unwilling " then the fund reverts to and becomes part of the residuary estate. In paragraph Seventh of his will the testator bequeathed his residuary estate in trust with the remainder to be distributed among such charitable, benevolent and educational institutions as appointed by his widow in her will. In default of the exercise of such power of appointment the remainder of the trust will be distributed to certain charitable institutions named in the testator's will.

Pursuant to a prior decree this fund was paid in 1937 to two individuals as attorneys in fact of a body corporate named " Talmud Tora, Solomono Ir Doros Sapiro Vardu " organized in Lithuania and the individuals directed to furnish a bond to the executors. It now appears that the funds have not been transmitted to Lithuania or the building erected. Similar relief was denied in an application instituted by these petitioners in 1948 (N. Y. L. J., Sept. 15, 1948, p. 445, col. 2).

The said attorneys in fact have been cited on this application and have defaulted. The Verein has appeared and requests delivery of the fund to it to carry out the decedent's wish. The '' Board of the Jewish Religious Community at the Town of Vilnius '' has also appeared and requests that the application be denied and alleges that the purposes of the legacy can be fulfilled. In the 1948 proceeding contradictory representations were made, i.e., (a) that the entire Jewish population of Zosli perished during the German occupation, and (b) that those Jews who had escaped from Zosli then resided in the town of Vilnius.

Under all of the circumstances presented the court concludes that the legacy is impossible of performance. It is now twenty-five years since the decedent's death and present conditions in what was heretofore Lithuania are such that there is no prospect of the purpose of the legacy being fulfilled in the foreseeable future. It is a matter of common knowledge that the free exercise of religion or religious teaching is not permitted within the U.S.S.R. or countries absorbed into it. It is questionable whether, if the fund was transmitted to Lithuania, it could be used for the purpose intended and would not be confiscated by governmental authority. Typical of the means adopted to cope with the condition that a person in a country within the Russian sphere of influence will not actually receive funds was the promulgation of the regulation by the Treasury Department of the United States on February 27, 1951 (Code of Fed. Reg., tit. 31, § 211.3, subd. [a] as amd.; 16 Federal Register 1818). That regulation states '' that there is not a reasonable assurance that a payee in those areas will actually receive checks or warrants drawn against funds of the United States   *   *   *, and be able to negotiate the same for the full value ''. That regulation represents the official policy of the United States. Lithuania is one of the countries included in the regulation. The promulgation of this regulation raises an obstacle to the fulfillment of the purpose of this legacy which was not present upon the prior denial of a similar application.

The situation presented herein does not warrant the exercise of the cy pres doctrine as the fund will ultimately be distributed among charitable and benevolent organizations either in accordance with the exercise of the power of appointment in the will of the decedent's widow or in default thereof by the provisions of this testator's will. In this respect the case is distinguishable from *Matter of Muckl* (174 Misc. 35, 36) where a legacy was

given to a German religious order as a fund for the education of candidates for the missionary priesthood. Under conditions existing in Germany at that time and because of the antagonism of the Hitler régime toward religious denominations the Surrogate determined that it was possible " that a large part of this legacy will not be used for the purpose intended by the testator should the money be sent there." The Surrogate directed that the legacy be paid to a German branch of the same order located in the United States.

The court therefore determines that the fund herein should be repaid to the executors and the bond previously furnished by the attorneys in fact discharged. The fund will become part of the residuary trust.

Submit decree on notice.